321 P.2d 921

**UTAH LIQUOR CONTROL COMMISSION, Appellant,**

v.

**CLUB FERACO et al., Respondents.**

**No. 8649.**

Supreme Court of Utah.

Feb. 20, 1958.

Frank E. Moss, Co. Atty., Peter F. Leary, Bruce S. Jenkins, Asst. Co. Attys., Salt Lake City, for appellant.

George E. Bridwell, Salt Lake City, for respondents.

WADE, Justice.

The Utah Liquor Control Commission, sometimes hereinafter referred to as the Commission, instituted this action as libelant in the trial court and appellant here, to have all the personal property which was seized by police officer Caldwell on November 2, 1956, declared forfeited and confiscated by the state and sold or destroyed in accordance with law. The property includes all of the personal property which was located at 923 South State Street in Salt Lake City in the premises occupied by Club Feraco, including some alcoholic beverages. Officer Caldwell, a police officer of

Salt Lake City working on the vice squad, entered this club in the early morning hours of November 2, 1956, where he and his companions purchased four drinks of alcoholic beverage and thereupon arrested Leonard Feraco and Mary Lou Hooley, who were in charge of the premises, and took possession of the personal property in question and thereafter removed it from the premises. Club Feraco, Ross Feraco, Leonard Feraco and Mary Lou Hooley were named as libelees and are the respondents here. They also filed a cross appeal.

Club Feraco is an incorporated, non-profit social organization for members and their guests only. It has a state license to provide lockers, where its members may store their own liquor for use on the premises. The club occupies a building on the east side of, and its entrance is from, State Street. The inside of the club was divided by a partition running from east to west, which ends before it reached either the east or west end of the building, thereby leaving an open space at each end for passageway from one compartment to the other. The partition consisted of a solid wall part way up from the floor with the top part made of flowers and lattice work. Booths with tables were located north of this partition and the bar was located not far east of the street entrance and extended a short distance along the north wall. Also in the north compartment there were lockers for members to store their liquor, and east of the bar were more booths and a dancing space. A restaurant was operated south of the partition. The trial court designated the north compartment as the liquor business and the south compartment as the restaurant business, holding that the restaurant business was not connected with the illegal sales.

The trial court further found that on November 2, 1956, an illegal sale of alcoholic beverage was made to and in the presence of Officer Caldwell and his companions on the premises of Club Feraco. That thereupon Officer Caldwell seized and took into possession all of the personal property on the premises both in the restaurant and liquor compartments, and thereafter removed this property from said premises and commenced this action. However, it found that in removing such property much of it was wantonly and recklessly destroyed.

The court further found that the cafe or restaurant business conducted on the south side of the premises was separate and apart from the bar or liquor business and that the property on the south side of the premises was not kept or used in connection with any business conducted on the premises in violation of the Liquor Control Act. The court concluded and held from such findings that the seizure of the personal property which was only used in connection with the restaurant business was void and of no force or effect and ordered such property returned at the Commission's expense.

The Commission argues that the court's holdings show an erroneous construction and application of the law to the facts in this case. It points to the provisions of Section 32-8-20, U.C.A.1953, which provides:

"If the court shall find * * * that violations of this act did occur upon the premise * * *, then he shall also find that all * * * property so seized * * * was also used in connection with violation of this act * * * unless any of the claimants prove to the satisfaction of the court that said * * * property or some parts thereof were not used *for any purpose whatsoever in* connection with the operation of the business conducted on the premises * * *." (Emphasis added.)

The requirement that if the court finds that violations occurred on the premises it must also find that all property seized was also used in connection with such violations clearly suggests that such forfeiture must be based on a connection between the use of the property seized and the violations of the act. But the further provision requiring a claimant to prove to the satisfaction of the court that said property or some parts thereof were not used for any purpose whatsoever in connection with the operation of the business conducted on the premises, if taken literally, indicates that there need

be no connection in the use of the property seized with the violations of the act, but that all that is required is that the property seized be used in connection with the operation of the business conducted on the premises. This last provision does not expressly require that the property seized be used in connection with the business conducted on the premises in violation of the act. However, we think that such was the legislative intent.

It would seem strange indeed for the legislature to require the court to expressly find a connection between the use of the property seized and the violations if it in fact intended that no such connections were necessary in order to sustain a forfeiture of such property, but that all that was required to work a forfeiture of the property seized was a connection between the use of such property and some other business conducted on the premises. Although the last provision requires a showing of no connection between "the business conducted on the premises" and the use of the property seized, it does use the term "the business" not "any business conducted on the premises." If the latter provision were used, it would definitely indicate that it would be sufficient if there were a connection with any business conducted on the premises even though such business were not connected with the violations of the act. But the use of the term "the business" in this context is more restrictive and less inclu-

sive. It suggests a reference to some specific or definite business, and indicates an intention to refer to "the business in violation of the act" which the court finds was being conducted on the premises. This we conclude was the intended meaning of this provision.

In accordance with this conclusion, Section 32–8–16, U.C.A.1953, in dealing with the seizure under a search warrant requires the officer "to seize such alcoholic beverages, with the vessels containing them, and all implements, furniture and fixtures used or kept for such illegal acts, * * *" This clearly requires a connection between the illegal acts and the use of the property seized. Again in Section 32–8–20, cited and quoted from above, it is stated that if any person "shall make a written plea that such alcoholic beverages, or tangible personal property, or any part thereof, claimed by him were not kept or used in connection with any business wherein violations of this act were part of said business, then the court shall proceed to a trial * * *." Thus requiring an affirmative pleading that the property claimed was not kept or used in connection with any violation of the act and indicating that if the property seized was not so kept or used, the seized property would not be subject to forfeiture. Such was our holding in Hemenway & Moser Company v. Funk,[1] wherein we said:

"The legislature has declared that all tangible personal property found upon the premises where a violation of any of the provisions of the Liquor Control Act has occurred, is subject to seizure, if the violation occurs in the presence of the officer and he has reason to believe that one of the businesses conducted upon those premises is in violation of the act. But that property is not subject to forfeiture unless the court finds that the use of that property was in violation of the act or tends to aid or further the business, a part of which is connected with a violation of the act, so as to become a part of that business. In other words, the act does not contemplate a forfeiture of all of the property simply because it is on the premises. It recognizes that two distinct businesses may be conducted upon the premises neither of which is a part of or in furtherance of the other; and in which case the illegality of one business would not affect the property of the other."

So we conclude that in order to effect a forfeiture of the property seized it is necessary that such property be used in connection with a violation of the Liquor Control Act, and recognize that there may be property on the premises where the violation oc-

1. See Hemenway & Moser Company v. Funk, 100 Utah 72, on page 83, 106 P.2d 779, on page 784.

curred which was not used in any manner whatsoever in connection with the violation of the Act.

■ The Commission next contends that the trial court, contrary to the above quoted statement, placed the burden of persuading, or satisfying the court that the seized property was used in connection with business in violation of the Act conducted on the premises, whereas the statute expressly requires the court to find such connection "unless any of the claimants prove to the satisfaction of the court that said tangible personal property or some parts thereof were not used for any purpose whatsoever in connection with the operation of the business conducted on the premises." The effect of this statute is to create a presumption from the establishment of the fact that violations of the Act occurred on the premises, that the seized property was used in connection with the violations of the Act, which places on the claimant the burden of persuading, or satisfying the court that the seized property was not used for such purpose. So if there was no evidence on the question, or if the court is not convinced that there was no connection, the court is required by the statute to find the facts on that issue in favor of the Commission and against the claimant.[2]

■ The evidence on the issue of whether the personal property on the south side of the premises was used in connection with the illegal liquor business conducted on the property is sufficient to sustain a finding either way. If the court was convinced that two separate businesses were conducted on the premises, the restaurant business on the south side and the illegal liquor business on the north side, and that the restaurant business was in no way connected with the illegal liquor business, then its finding was correct. Some statements in the court's memoranda decisions tend to indicate that the finding was based on a failure of the Commission to produce any evidence of a connection between the restaurant business and the illegal liquor business, but a full consideration of the memorandum decision denying a new trial indicates that such was not the fact. Therein the court, after referring to the statute, said, "the burden was then on claimant to prove such articles were not connected with the liquor business." Later the court concludes this memorandum with this statement, " * * * the court is more deeply convinced that the judgment as entered is right." This indicates that the court correctly applied the provisions of this statute to the facts and its judgment in that respect must be sustained.

2. To the effect that the person who does not have the burden of persuasion does not have to produce proof in order to support a finding in his favor. See in re Swan's Estate, 4 Utah 2d 277, 293 P.2d 682, note 4.

■■ The Commission further contends that the court erred in ordering the sheriff of Salt Lake County instead of the seizing officer to sell the forfeited property and destroy the liquor. Section 32–8–24, U.C.A. 1953, provides that, "the court shall direct the officer to sell such property." And Section 32–8–23, U.C.A.1953, provides that all confiscated alcoholic beverages shall be destroyed "as may from time to time be directed by the commission." There is no doubt that "the officer" designated in Section 32–8–24 means the seizing officer, and that "the Commission," designated in Section 32–8–23, to direct the destruction of alcoholic beverages is the Utah Liquor Control Commission. In neither case does the statute authorize the sheriff to sell or destroy the property in question. So we conclude that the court erred in making such order and that the sale should be set aside.

■■ In making a new order of sale, there is another item which should be corrected. The order of sale directed the sheriff to sell $404.60 in cash which was seized, as well as the other items of personal property, other than the liquor, which were confiscated. There is no occasion whatever for the sale of cash, for the only purpose of a sale of personal property in a case of this kind is to reduce or convert the property to cash so that it can be turned over to the proper authorities. It is entirely improper for the court to direct the sale of cash.[3] To do so, as it turned out in this case, not only was improper but caused a great loss to the state for there was at least $404.60 in cash which was purported to have been sold along with a long list of personal property for the mere sum of $10.

■ Only one point in respondent's cross-appeal requires consideration. The trial court found that instead of the police officer seizing the tangible personal property and holding it safely as required by Section 32–8–17, U.C.A.1953, that the officer and his helpers wantonly destroyed and broke up much of such property along with some real property in removing it from the premises. It further found that the officer was unjustified in removing any of the property from the premises without an order of court since the libelees, before the property was removed, offered to allow the officer to padlock and close the premises and hold the property seized until after the trial court's decision on what, if any, property should be confiscated. Respondents argue that on account of this wanton destruction and unreasonable removal of the property from the premises, the acts of seizure and of forfeiture by order of the court were not justified and should be declared a nullity and the property returned to respondents. We know of no law which requires such

3. See 21 Am.Jur. 198, Executions, section 398. Money.

a result. As we have already held, the seizure and forfeiture of part of the property was in accordance with the statutory requirement. The fact that the officer in violation of his duty failed to keep the property safely does not vitiate the seizure and forfeiture of the part of property which was not destroyed.

The judgment is affirmed in part and reversed in part, with directions to proceed further in accordance with this opinion. No costs awarded.

McDONOUGH, C. J., and CROCKETT and WORTHEN, JJ., concur.

HENRIOD, Justice (concurring in part and dissenting in part).

I concur in that portion of the main opinion as it relates to an interpretation of Title 32-8-24, U.C.A.1953, having to do with designation of the custodian of seized property. However, I cannot subscribe to the trial court's conclusion that the club in question was something in the nature of a set of Siamese twins with respective Dr. Jekyll and Mr. Hyde personalities.

This club was one establishment supported by dues paying members. It had one front door. It was operated in one large room. It had a broken partition in the middle of the room that in no way prevented the free flow of traffic from its north half to its south half and vice versa. This half-partition rose but partly to the ceiling. Atop it were lattice work and flower adornments, neither of which kept any lively banter on the north from reaching the ears of the presumably less convivial restaurant patrons to the south, who, according to the logic of the trial court's decision, must have found a gourmet's haven apart from the illegitimate conduct of their neighbors to the north.

On the north of this so-called partition were a bar and nearby tables where members and their guests might sit. On the south of this so-called partition were tables where members and their guests might sit. For aught we know the members seated to the north could have ordered a steak, and those seated to the south could have ordered a bucket of ice and a mixer. Yet, according to the decision below, the arresting officers properly seized the tables and chairs to the north but made a grave error in seizing the tables and chairs to the south of this quasi-partition whose presence, with its lattice work and flowers, by some sort of statutory prestidigitation separated the reveling goats from the punctilious sheep. One wonders what the arresting officer should or could have done had there been a foursome seated at a table astraddle the imaginary Mason and Dixon line extending from the ends of the part-partition to the west and east walls, and certainly such a situation would have presented an enigmatic problem in division on the occasion of the drafting of a seizure and

sale order. One wonders if the immunity that was granted in this case to the tables and chairs lying south of the border would have persisted had the arresting officers elected to buy a drink to the south instead of to the north. One wonders, in such case, if seizure of property would have to have been confined to the area south of the so-called partition, while that to the north thereof, including the bar and the liquor, would have enjoyed the immunity spoken of above as being in a domain geographically protected by the pseudo-partition with its imaginary extended lines.

In my opinion the facts in this case do not lend themselves to any reasonable conclusion that an illegitimate business was being conducted in the area north of the partition but that to the south thereof business legitimacy was a virtue not shared in the same room to the north. I believe such conclusion to have been unrealistically arbitrary and that if the business in the one area was legitimate it was in the other and vice versa. Although I personally have serious doubts as to the constitutionality of the section under which the property in this case was seized without a warrant, under the main opinion's affirmance of the trial court's conclusion in this case, had the peace officers carried a search warrant they still would have found themselves on the horns of a dilemma and their seizure to the south of the imaginary line involved here would have impaled them nonetheless, as

the lower court implied it did here where they seized the property under a statute that required no search warrant. If both areas in this case are not treated alike, it seems obvious to me that not only absurd results are in the offing, but an effective and easy way is created to circumvent the statute involved. Besides, under the decision of this case peace officers have no yardstick they may employ in dealing with similar situations.